WATT *vs.* WATT and others.

A regular decree, entered by default, will not be opened to let in a defence of usury; without an offer on the part of the defendant to waive the forfeiture, and to consent to a decree for the payment of what is equitably due.

Where a power of attorney authorizes the person appointed to appoint an attorney *under him,* and to revoke such appointment at his pleasure, the death of the principal attorney necessarily revokes the power of the substitute.

The right which a person acquires by the purchase of all the interest of the mortgagor, in the mortgaged premises, after the mortgagor has suffered a bill of foreclosure to be taken as confessed against him, is subject to the rights which the complainant has acquired in that suit, and to the admissions which the mortgagor has made, by suffering the bill to be taken as confessed. And while the order taking the bill as confessed against the mortgagor remains in force as to him, his grantee cannot set up a defence which the mortgagor himself could not have made, had he continued to be the owner of the equity of redemption.

THIS was an appeal, by the complainant, from an order of the vice chancellor of the first circuit, setting aside an order to take the bill as confessed against M. G. Pinckney, one of the defendants; and allowing her to put in the answer of which a copy was used upon the application. The original bill was filed in November, 1840, upon the oath of the complainant, to foreclose a mortgage executed in August, 1834, by the defendant Archibald Watt, to the complainant, upon a very large number of unimproved building lots in the twelfth ward of the city of New-York. The mortgage was given to secure the

payment, in March, 1839, of $125,000, with annual interest at six per cent from the first of March, 1834; and there was due upon it, to the complainant, for principal and interest, on the 31st of October, 1840, as stated on oath in his bill, the sum of $174,083.

The premises, at the time of the execution of the mortgage, were encumbered with several previous mortgages; and the mortgage to the complainant contained a covenant, on his part, that upon payment of any part of his mortgage, or of the previous incumbrances on the premises, by the mortgagor or his assigns, he would, for every $70 thus paid, release one of the vacant lots from the lien of the mortgage. Several portions of the mortgaged premises were accordingly released from the lien of the mortgage, by the complainant, or his attorney lawfully authorized, and which the bill admitted were legally discharged from such lien. Two other releases were executed, in the name of the complainant, by J. L. Bell, who claimed to be authorized to do so by virtue of a power of substitution, executed by the complainant's attorney, appointing Bell an attorney under him. But the complainant denied the authority of Bell, and repudiated the releases; upon the ground that the principal attorney, who appointed Bell as attorney under himself, was known to be dead long before the execution of those releases. The complainant therefore claimed to enforce the lien of the mortgage against the lots so attempted to be released in his name.

*G. B. Butler,* for the appellant.

*J. L. Mason,* for the respondent.

The Chancellor. An examination of the facts in this case will show, that the vice chancellor erred in permitting the grantee of Archibald Watt to come in and make a defence in this cause which the grantor himself was not authorized to make, at the time of the conveyance from him to such grantee, in March, 1843. At the time of the filing of the bill in this cause, the title to the equity of redemption, in nearly all of the

mortgaged premises which had not been released from the lien of the mortgage, was in A. Watt the mortgagor. And the respondent was made a party defendant only because she was the apparent owner of the equity of redemption in eight of the lots covered by the mortgage; and her sister A. H. Pinckney was also made a party as the apparent owner of eight other lots. But it is not pretended that any of these sixteen lots were those which the mortgagor claimed to have released, or which were afterwards decreed to be released from the lien of the complainant's mortgage. Indeed the interests of both of these young ladies in the mortgaged premises were merely nominal; for it appears by the affidavit of Mr. Butler, that their lots had been sold for taxes, for a term of three hundred years, and had not been redeemed. And it does not appear from any of the papers before me on this appeal, that any of the lots which the decree of the vice chancellor had directed to be released, belonged to A. Watt at the time of the conveyance from him to the respondent, in 1843.

This bill was regularly taken as confessed against Archibald Watt and wife, in August, 1841, about the time of making the decree by the assistant vice chancellor in the other suit; and both verbal and written notice of the order was immediately given. Their solicitor was also repeatedly informed that the complainant was determined not to have their default opened. If Watt and wife, therefore, had any defence to the suit originally, they were not in a situation to make it, or to ask to have the order taking the bill as confessed set aside, at the time of their conveyance to the respondent; which was more than eighteen months afterwards. Besides; it is perfectly evident from the answer which the respondent proposes to put in, that she knows nothing of the defence attempted to be set up in that answer, except from the information of A. Watt.

Again; if the defence of usury in fact existed in this case, which is positively contradicted by the affidavit of the complainant, it would not be proper to open a regular default to let in that defence, without an offer on the part of the defendant to waive the forfeiture, and to consent to a decree for the pay-

Watt *v.* Watt.

ment of what was equitably due. The complainant is also right in supposing that the authority of Bell, as the attorney substituted by Ogilvie, ceased by the death of the latter. It is not necessary to say whether that would be the case where there was a general power of substitution, and without giving a right to revoke the authority of the substitute. But in this case the authority given to Ogilvie was to appoint an attorney *under him,* and to revoke such appointment at his pleasure. In such a case, the death of the principal attorney necessarily revokes the power of the substitute ; as he is no longer an attorney under such principal attorney, within the meaning of the original power to substitute an attorney under him.

The right which the appellant acquired by the conveyance of all the interest of Archibald Watt in the mortgaged premises, subject to the several liens and incumbrances thereon, was subject of course to the rights which the complainant had then acquired in this suit, and to the admissions which the grantor had made by suffering the bill to be taken as confessed against him. And while the order taking the bill as confessed remains in full force as to him, his grantee can set up no defence which Archibald Watt himself could not have made if he had continued to be the owner of the equity of redemption which he has conveyed to her. (*Bank of Utica* v. *Finch,* 1 *Barb. Ch. Rep.* 75.)

Although the bill was regularly taken as confessed against the respondent, both as to her original interest in the matters in controversy, and also as an heir at law to her sister, I should require the complainant to release her interest in the sixteen lots from the lien of the mortgage, or permit her to put in a proper answer to protect her rights in those lots, if there was any fact sworn to, as being within her own knowledge, constituting a valid defence. But as nothing of that kind appears, the only proper course seems to be to reverse the order appealed from entirely, and to dismiss the respondent's application.

Order accordingly.